UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOSEPH DIXON,                                    CIVIL NO. 11-2558 (JNE/JSM)

     Plaintiff,

v.                                               <u>REPORT AND RECOMMENDATION</u>

CLEARWIRE CORPORATION,
*on behalf of its wholly-owned*
*subsidiary Clear Wireless LLC*
*(collectively referred to as*
*Clear Wireless),*

     Defendant.

The above matter came on before the undersigned upon defendants' Motion to Dismiss [Docket No. 4]; plaintiff's Motion for Summary Judgment [Docket No. 12]; plaintiff's Motion for Sanctions Against Defendant and its Counsel Kerry Middleton and Rhiannon Beckendorf on Grounds of Perjury [Docket No. 14]; and Plaintiff's Motion to Default Judgment [Docket No. 18].

Plaintiff Joseph Dixon appeared <u>pro</u> <u>se</u>.  Kerry L. Middleton, Esq. and Rhiannon C. Beckendorf, Esq. appeared on behalf of defendant.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.    BACKGROUND

Plaintiff Joseph Dixon filed a Complaint against defendant Clear Wireless, LLC in Ramsey County District Court.  <u>See</u> Docket No. 1-1.  On September 6, 2011, defendant removed this action to United States District Court, District of Minnesota based on federal question and diversity jurisdiction.  <u>See</u> Notice of Removal [Docket No. 1].

The facts alleged in the Complaint are as follows:  On or about March 1, 2011, defendant established internet service with plaintiff.  <u>See</u> Complaint [Docket No. 1-1], ¶ 3.  The contract between the parties was for unlimited wireless internet service at fixed rate of $30 per month, which was due on or about 21st day of each month.  <u>Id.</u>, ¶ 4.  On March 1, 2011, plaintiff received an invoice from defendant requesting $30 for monthly service and asking him to review his plan and to complete set-up of service.  <u>Id.</u>, ¶ 4(A)-(B).

Plaintiff filed an E-Claim complaint against defendant with Wells Fargo Bank on the basis that defendant had illegally withdrawn money repeatedly from his Wells Fargo bank account for amounts not owed and not authorized by plaintiff.  <u>Id.</u>, ¶ 8.  In particular, while defendant was authorized to withdraw $30 pursuant to the contract, on March 23, 2011, defendant fraudulently withdrew $84.75 from plaintiff's bank account.  <u>Id.</u>, ¶ 9.  Defendant also withdrew $40 on March 25, 2011.  <u>Id.</u>, ¶ 9(H).  These actions by defendant amounted to a "RICO Fraud Statutes Violation"[1] involving "ill-gotten" money that defendant was not entitled to receive in the amount $84.75 when the amount actually owed was $30.  <u>Id.</u>, ¶ 9(A).  This illegal withdrawal on bank funds also resulted in overdrawn charges on plaintiff's account in the amount of $35.  <u>Id.</u>

On April 21, 2011, defendant engaged in another "RICO Fraud Statutes Violation" involving "ill-gotten" money that defendant was not entitled to receive in the amount $71.87, when the amount actually owed was $30.  <u>Id.</u>, ¶ 9(B). This illegal withdrawal of bank funds also resulted in overdrawn charges on plaintiff's account in the amount of $35.  <u>Id.</u>  After complaining to Wells Fargo Bank and the Minnesota Attorney General, defendant made a partial refund of the amounts illegally taken.  <u>Id.</u>, ¶ 9(C)-(D).

---

[1]     Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

On May 23, 2011 defendant withdrew $49.32 from plaintiff's account, which was not authorized by the contract, in violation of the RICO fraud statutes.  Id., ¶ 9(F).

Defendant's unlawful acts and conduct were done with the intent of defraud and in violation of the RICO fraud statutes.  Id., ¶ 9(I).

On June 6, 2011, defendant contacted plaintiff, demanding money from him even though his internet service had been disconnected.  Id., ¶ 9(J).  Defendant's representative demand of $46.08 amounted to an "unauthorized collection" and "bait and switch" from the monthly payment owed per contract of $30.  Id.  Plaintiff claimed that the "bait and switch" by defendant was an act of fraud in violation of RICO.  Id., ¶ 9(K)-(L).

On July 7, 2011, plaintiff paid defendant $30, even though defendant owed money to plaintiff and his internet service had been terminated.  Id., ¶ 9(M).  On the same day, defendant's representative contacted plaintiff and demanded that he make a payment to defendant in the amount of $66.08 for internet service that had been suspended, and for an amount not owed under the contract.  Id., ¶ 9(M)[sic]-(O).  This "bait and switch" scheme, which included an unlawful $25 suspension fee, was illegal, and therefore was prohibited by the RICO fraud statutes.  Id., ¶ 9(O).  Plaintiff's internet service has been disconnected by defendant, plaintiff does not owe defendant any money, and defendant owes plaintiff money arising out of overcharging him for services.  Id., ¶ 9(P).

In mid-July 2011, plaintiff paid $30 to defendant to get his internet service turned back on, but defendant has failed to restore his service.  Id., ¶ 9(Q).

The "bait and switch" by defendant was a violation of RICO, as it involved fraud, ill-gotten money and theft.  Id., Conclusions ¶¶ 9, 11.  The "bait and switch" involved

3

defendant luring plaintiff into signing up for wireless internet service at a fixed rate of $30 and switching the account charges to a higher rate and reduced quality of service. Id., ¶ 13.  Defendant breached the contract because it unlawfully terminated plaintiff's paid internet service.  Id., ¶¶ 10, 12.

Plaintiff asked for $450,000 in damages and treble damages under the RICO fraud statutes.  Id., ¶¶ 14-16.

Plaintiff asserted that he served the Complaint on defendant on August 17, 2011. See Affidavit in Support of Motion for Default Judgment [Docket No. 19].

Defendant filed the present motion to dismiss on September 13, 2011.  Plaintiff also brought a motion for summary judgment, a motion for sanctions against defendant and their counsel, and a motion for default judgment.[2]

## II.   STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

---

[2]    Plaintiff argued that removal by defendant was improper because he was not properly served with the notice of removal.  See Plaintiff Joseph Dixon's Memorandum of Law in Support of Response, Denial and Objection to Defendant Clearwire Corp. LLC Motion to Dismiss Plaintiff's Lawful Complaint and Claim ("Pl.'s Opp. Mem.") [Docket No. 15], pp. 18, 30-31; Plaintiff Joseph Dixon's Memorandum of Law in Support of Motion for Summary Judgment Summary Judgment ("Pl.'s Sum. Judg. Mem.") [Docket No. 13], p. 15.  This argument is not properly before the Court because plaintiff brought no motion for remand.  In any event, even if plaintiff brought such a motion now or the Court converted the raising of this issue in his memoranda to a motion for remand, it is rejected.  Pursuant to 28 U.S.C. § 1447(c), a motion to remand on the basis of any defect other than lack of subject matter jurisdiction must be made within thirty days after the filing of a notice of removal.  The first time plaintiff raised this issue after removal on September 6, 2011 was on October 20, 2011, well after the 30-day deadline for a timely motion to remand.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement does not require detailed factual allegations. Martin v. ReliaStar Life Ins. Co., Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555). On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S., at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556). As the Supreme Court explained in Iqbal:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the

> mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50.

Pro se complaints, "however inartfully pleaded" are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). "'[I]f the court can reasonably read the pleadings to state a valid claim on which the [plaintiff] could prevail, it should do so despite the [plaintiff's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991)). But the court's liberal construction does not extend to allowing defective and insufficiently pled claims to proceed. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (pro se complaint must allege facts sufficient to support the claims advanced); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). ("[A]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."); Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir.1981) ("[P]leadings * * *brought pro se [ ] are to be liberally construed. * * * But a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts.") (citations omitted). Neither may the courts, in granting the deference owed to pro se parties, "assume the role of advocate for the pro se litigant." Barnett, 174 F.3d 1133.

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within

6

the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915.  Consequently, a court "will not supply additional facts, nor will

[it] construct a legal theory for plaintiff that assumes facts that have not been pleaded."

Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

Finally, pro se litigants, like attorneys, must comply with Rule 11 of the Federal

Rules of Civil Procedure, which states in relevant part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; ….

Fed. R. Civ. P. 11.

The Court now applies these principles to the motions before this Court.

## III.   DEFENDANT'S MOTION TO DISMISS

### A.   RICO CLAIM

In its motion to dismiss, defendant argued that plaintiff cannot state a civil RICO

claim.  See Memorandum of Law in Support of Defendant's Motion to Dismiss [Docket

No. 6] ("Def.'s Mem."), p. 5.   In particular, defendant asserted that plaintiff has not alleged a pattern of racketeering activity involving defendant committing two or more predicate acts having sufficient continuity and relationship.  Id., pp. 5-6.  While plaintiff alleged that defendant committed mail or wire fraud, defendant claimed that not every use of the mail or wire resulting in a failure to fulfill expectations amounts to mail or wire fraud, and in any event, plaintiff failed to allege his assertions of fraud with the necessary particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Id., pp. 6-7.  Defendant also contended that a single injury to a single person, like here, over a period of months is not sufficient to establish a pattern of mail or wire fraud sufficient to state a viable RICO claim.  Id., pp. 7-8.  In addition, defendant claimed that plaintiff cannot show the existence of a RICO enterprise, given that he has not pled the existence of two distinct entities.  Id., pp. 8-9.

Plaintiff countered that his RICO claim is viable because a separate party, Vonage Marketing LLC, settled a case involving similar facts as those in the present case.  See Pl.'s Opp. Mem., pp. 9-11, 25-26.  Further, plaintiff argued that because defendant admits that the allegations in the Complaint are true, the Court must immediately grant him judgment.  Id., pp. 11-12.  In support of his claim that defendant committed fraud, plaintiff maintained that defendant's submission of an unauthorized request to Wells Fargo to take money out of his account and then disconnecting his internet, constituted fraud.  Id., pp. 13-14.  Plaintiff also noted that RICO has been applied to a wide range of scenarios, including against an insurer who overcharged insureds for medical copayments by not passing on negotiated provider discounts.  Id., p. 25.

This Court finds that plaintiff has failed to adequately state a claim for relief under RICO. The RICO Act, 18 U.S.C. § 1962(b), provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

To state a claim for damages under RICO, a complaint must "show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Crest Const. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009), quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted)).

A RICO enterprise consists of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4). "The enterprise does not have to have a hierarchy, chain of command, fixed roles, or even a method of making decisions. An association-in-fact enterprise need only have 'three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.'" Crest Constr. II, NO. 07-0728-CV-W-DGK, 2010 WL 3456690 at *3 (W.D. Mo. Aug. 27, 2010), aff'd by 660 F.3d 346 (8th Cir. 2011), (quoting Boyle v. United States., 129 S.Ct. 2237, 2243-2244 (2009)); see also Murrin v. Fischer, 07-CV-1295 (PJS/RLE), 2008 WL 540857 at *12 (D. Minn. Feb. 25, 2008) ("As defined by RICO, an enterprise has three (3) components: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure different from that inherent in a pattern of racketeering.") (citing United States v. Lee, 374 F.3d 637, 647 (8th Cir. 2004), cert.

9

denied, 545 U.S. 1141 (2005); United States v. Kehoe, 310 F.3d 579, 586 (8th Cir. 2002), cert. denied, 538 U.S. 1048 (2003); McDonough v. National Home Insur. Co., 108 F.3d 174, 177 (8th Cir. 1997); United States v. Lemm, 680 F.2d 1193, 1198 (8th Cir. 1982), cert. denied, 459 U.S. 1110 (1983)).

In order to make out a "pattern of racketeering activity," 18 U.S.C. § 1961(5), requires a plaintiff to plead the existence of at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), and to further establish that those predicate acts manifest the elements of "continuity plus relationship." Murrin, 2008 WL 540857 at *12 (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 238-39 (1989)).

"Racketeering activity" refers to criminal activity and includes bribery and extortion, "which is chargeable under State law and punishable by imprisonment for more than one year;" and certain acts "indictable" under federal law. See 18 U.S.C. § 1961(1)(A), (B). "[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008) (citations omitted). To do this "a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity)." Id.; see also Murrin, 2008 WL 540857 at *12 ("Continuity can be either closed- or open-ended") (citing H.J. Inc, 492 U.S. at 241-42)). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time," although '[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.'" Murrin, 2008 WL 540857 at *12

10

(citing H.J. Inc., 492 U.S. at 238-39; United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006) (noting that Courts have found that closed-ended continuity requires a scheme that lasts at least one year)).  "In contrast, open-ended continuity can be established by showing the existence of a specific threat that extends indefinitely into the future." Id. (citing Lange v. Hocker, 940 F.2d 359, 361 (8th Cir. 1991); Hively, 437 F.3d at 761). Thus, to establish open-ended continuity, the plaintiff must show "that the predicate acts themselves involve a distinct threat of long-term racketeering activity or that the predicate acts constitute a regular way of conducting an on-going legitimate business or a RICO enterprise." Crest Constr. II, 2010 WL 3456690 at *3.

A RICO claim based on fraud must be pled with particularity under Rule 9(b). "Under Rule 9(b)'s heightened pleading standard, allegations of fraud ... [must] be pleaded with particularity. In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir.2011) (alteration in original) (citation and internal quotation marks omitted).

Affording plaintiff the benefit of a liberal construction of his pleading, this Court cannot read into his Complaint a properly pled RICO claim against defendant. First, plaintiff's statements regarding fraud and RICO are exactly the sort of conclusory statements soundly rejected under Iqbal and Twombly.

Second, plaintiff failed to allege an enterprise, much less one engaged in interstate or foreign commerce, as required by the statute.  Moreover, plaintiff has failed to allege an enterprise with an ascertainable structure different from that inherent in the pattern of racketeering, given that the alleged malfeasance by defendant arises out of its business as a provider of internet services for a fee.

Third, the Court finds no facts that suggest a pattern of racketeering activity given that the Complaint bases the RICO claim on fraud accomplished through a series of wire or mail fraud acts that are "related" by purpose in overcharging a single victim, plaintiff, for internet services and are only spread over a period of several months.  See Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 980 (8th Cir. 1991) (quoting Marshall-Silver Constr. Co. v. Mendel, 894 F.2d 593, 597 (3d Cir. 1990)) ("'Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are "related" by purpose and are spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its "natural and common sense approach to RICO's pattern element," we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat.'").

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Nebraska State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's

fraud claims for failure to satisfy the particularity requirement of Rule 9(b)); McLean v. United States, 566 F.3d 391, 400-401 (4th Cir. 2009) ("to the extent…that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

Here, the offending transactions between plaintiff and defendant at most amount to a claim for breach of contract and not a claim of pattern of racketeering activity on the part of defendant.  Consequently, even if plaintiff could allege acts constituting fraud, plaintiff cannot can plead, much less show, an enterprise (presumably defendant), with an ascertainable structure, different from that inherent in a pattern of racketeering (in this case an internet provider charging more for internet services than agreed to by a customer pursuant to an alleged contract), and a pattern of racketeering activity. Therefore, any attempt to amend the Complaint to assert a viable RICO claim would be

futile, and the Court recommends that defendant's motion to dismiss as to the RICO claim should be granted and that the claim be dismissed with prejudice.[3]

## B.   <u>Breach of Contract</u>

Defendant argued that because plaintiff failed to make any allegations as to the formation of the contract between the parties or the material breach, and plaintiff failed to attach the contract at issue, the Court cannot discern the terms of the contract and therefore, the claim should be dismissed.  <u>See</u> Def.'s Mem., p. 10.  Plaintiff asserted that the March 1, 2011 email invoice was the contract between the parties that required him to pay $30 for internet service.  <u>See</u> Pl.'s Opp. Mem., p. 4.

Under Minnesota law, a breach of contract claim contains the following elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." <u>Parkhill v. Minn. Mut. Life Ins. Co.</u>, 174 F. Supp.2d 951, 961 (D. Minn. 2000) (citing <u>Briggs Trans. Co. v. Ranzenberger</u>, 217 N.W.2d 198, 200 (Minn. 1970)).   The formation of a contract requires an offer, acceptance, and consideration.  <u>See</u> <u>Taxi Connection v. Dakota, Minnesota & Eastern R.R. Corp.</u>, 513 F.3d 823, 826 (8th Cir. 2008) (citing <u>Commercial Assocs., Inc. v. Work Connection, Inc.</u>, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006)); <u>see</u> <u>also</u> <u>Cederstrand v. Lutheran Bhd.</u>, 263 Minn. 520, 529-32, 117 N.W.2d 213, 219-21 (1962).  "Consideration is something of value exchanged for a performance or promise of performance."  <u>In re MJK Clearing, Inc.</u>, 408 F.3d 512, 515 (8th Cir. 2005) (citing <u>E.J. Baehr v. Penn-O-Tex Oil Corp.</u>, 258 Minn. 533, 104 N.W.2d 661, 665 (1960)).

---

[3]     The extent that plaintiff is relying on Kansas law in support of a price fixing conspiracy, this Court finds that Kansas state law has no bearing on a transaction between a Minnesota resident and a Nevada corporation.

Construing all reasonable inferences from the facts plead in the Complaint in a light most favorable to plaintiff, the Court finds that he has stated a viable breach of contract claim. The Court makes this finding on the basis that Complaint alleged that plaintiff entered into a contract with defendant in which defendant agreed to supply to him unlimited internet services in exchange for a fixed rate of $30. See Complaint, ¶ 4(A). The Complaint attached the set-up completion form from defendant that stated that Petitioner's estimated subtotal for services was $30. Id., Ex. 8. Plaintiff then alleged that defendant breached the agreement by overcharging him for internet services and ultimately terminating service even though he paid the $30. See Complaint, ¶ 9. Because plaintiff plead facts from which this Court could determine that it was plausible that a contract was formed and breached, the Court finds that defendant's motion to dismiss should be denied as to the breach of contract claim.

## IV.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moved for summary judgment on the basis that defendant has admitted all of the allegations in the Complaint, the Court lacks jurisdiction to hear the motion to dismiss based on defendant's failure to provide him with adequate notice of the removal to federal court, and based on perjury by defendant. See Pl.'s Sum. Judg. Mem., p. 15.

Defendant countered that plaintiff's motion for summary judgment is premature, given that it has not yet filed an answer and no discovery has occurred in this case, and that it only accepted as true the allegations in the Complaint for the purpose of bringing its motion to dismiss. See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment [Docket No. 22], p. 3.

The Court agrees with defendant that when reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true. . . ." Brown v.

15

Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010).  Thus, when defendant accepted as true the allegations in the Complaint for the purpose of the motion to dismiss, it was not admitting the allegations in the Complaint for the purposes of rendering judgment against it.  In addition, as stated previously, any assertion of improper removal by defendant should have been addressed by a timely motion to remand, which was never brought.

Finally, the Court finds that "[a]lthough discovery does not have to be completed before a district court can grant summary judgment, summary judgment is proper only after the nonmovant has had adequate time for discovery."  Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) ("Although discovery does not have to be completed before a district court can grant summary judgment, summary judgment is proper only after the nonmovant has had adequate time for discovery.") (internal quotation marks and citation omitted); see also Brown v. Ameriprise Financial Services, Inc., 707 F. Supp.2d 971, 979 n.5 (D. Minn.  2010) (citations omitted) ("A party opposing summary judgment on the ground that she has not had an adequate opportunity for discovery typically must file an affidavit under Federal Rule of Civil Procedure 56(f). Although Brown has not filed such an affidavit here, the Court will liberally construe her Memorandum in Opposition to Ameriprise's Motion for Summary Judgment as such an affidavit.").  The only surviving claim in this case is plaintiff's allegation of a breach of contract, and without the underlying contract, as well as other discovery pertaining to the contact and its purported breach, the Court cannot properly make a decision as to this claim.  As such, the motion for summary judgment is premature and should be denied without prejudice.

## V.    PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff filed a one-page motion for sanctions against defendant and its legal counsel on the grounds of perjury.   See Plaintiff's Motion for Sanctions Against Defendant and its Counsel Kerry Middleton and Rhiannon Beckendorf on Grounds of Perjury [Docket No. 14].   In his motion for summary judgment, plaintiff asserted that statements in the process server's affidavit were false regarding the attempts to serve him with the notice and motion or removal, and that defendant and its counsels' reliance on such representation amounted to perjury and entitled him to Rule 11 sanctions.   See Pl.'s Sum. Judg. Mem., p. 20.

Defendant argued that plaintiff failed to follow proper procedure for filing a Rule 11 motion for sanctions, including failing to provide it with the motion or notice of the motion in advance of filing the sanctions motion with the Court.   See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions [Docket No. 27], pp. 2-4; see also Affidavit of Rhiannon C. Beckendorf [Docket No. 28] ("Beckendorf Aff.") ¶ 2.   In addition, defendant argued that plaintiff did not attribute any false statement to defendant or its counsel, or that they believed that the statements in the process server's affidavit were false.   Id., pp. 3-4; Beckendorf Aff. ¶ 2.

Plaintiff filed the motion for sanctions without giving defendants 21 days to respond under the safe-harbor provisions of Rule 11 and improperly included the basis of the motion for sanctions within the supporting papers of his motion for summary judgment. See Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and ... must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service [on the nonmoving party]."). Based on these

procedural defects, the motion for sanctions should be denied.   Further, plaintiff has provided no competent evidence to the Court that the process server's averments were false or the defendant and its counsel believed that the averments were false.

For all of these reasons, plaintiff's motion for sanctions should be denied.

## VI.   PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

The Federal Rules of Civil Procedure provide that default or default judgment may be entered against a party who "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  A motion for default judgment must be preceded by an entry of default. See Fed. R. Civ. P. 55(a) and (b).  "The entry of default judgment is not favored by the law . . . and should be a rare judicial act."  In re Jones Truck Lines, Inc., 63 F.3d 685, 688 (8th Cir. 1995) (citation and quotations omitted).

Plaintiff argued that default judgment is appropriate on the basis that defendant failed to serve and file an answer to the Complaint with 20 days of its service of the Summons and Complaint on defendant.   See Plaintiff's Motion to Default Judgment [Docket No. 18].  Defendant argued that it timely filed its motion to dismiss, in lieu of an answer, within the time period provided for under Rule 81(c) of the Federal Rules of Civil Procedure.   See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Default Judgment [Docket No. 23], pp. 2-3.

The Complaint in this case was dated August 2, 2011 against defendant Clear Wireless, LLC in Ramsey County District Court.  The Summons and Complaint were served on defendant on August 17, 2011.  See Notice of Removal [Docket No. 1], ¶ 9; see also Plaintiff's Affidavit in Support of Motion for Default Judgment [Docket No. 19], ¶ 2.  On September 6, 2011, defendant removed this action to United States District

Court, District of Minnesota based on federal question and diversity jurisdiction. See Notice of Removal [Docket No. 1]. On September 13, 2011, defendant, in lieu of answering the Complaint, brought a Rule 12(b)(6) motion to dismiss the Complaint.

Rule 81(c) of the Federal Rules of Civil Procedure provides in relevant part: Removed Actions.

> (1) Applicability. These rules apply to a civil action after it is removed from a state court.
>
> (2) Further Pleading. After removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:
>
> (A) 21 days after receiving--through service or otherwise--a copy of the initial pleading stating the claim for relief;
>
> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
>
> (C) 7 days after the notice of removal is filed.

Fed. R. Civ. P. 81(c) (emphasis added).

Given that defendant brought its motion to dismiss within seven days of the notice of removal, this Court finds that its response to the Complaint was timely. Additionally, defendant has not failed "to plead or otherwise defend" as is required by Rule 55(a), and consequently, there is no reason to believe that it abdicated its defense of this case.[4]

For these reasons, plaintiff's motion for default judgment against defendant should be denied.

---

[4] This Court also notes that no entry of default has been made in this case as required by Rule 55.

## <u>RECOMMENDATION</u>

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 4] be **GRANTED**  in part and **DENIED**  in part as follows:

>       a.      Defendant's motion to dismiss with regards to the RICO claim be **GRANTED** and the claim should be dismissed **WITH PREJUDICE**; and

>       b.      Defendant's motion to dismiss concerning the breach of contract claim be **DENIED**.

2.      Plaintiff's Motion for Summary Judgment [Docket No. 12] be **DENIED** without prejudice.

3.      Plaintiff's Motion for Sanctions Against Defendant and its Counsel Kerry Middleton and Rhiannon Beckendorf on Grounds of Perjury [Docket No. 14] be **DENIED**.

4.      Plaintiff's Motion to Default Judgment [Docket No. 18] be **DENIED**.


Dated:        June 11, 2012

>                                   s/ *Janie S. Mayeron*
>                                   JANIE S. MAYERON
>                                   United States Magistrate Judge

**NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 25, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **June 25, 2012**.
.