JOSEPH DIXON,                                    CIVIL NO. 11-2558 (JNE/JSM)

     Plaintiff,

v.                                               REPORT AND RECOMMENDATION

CLEARWIRE CORPORATION,
*on behalf of its wholly-owned*
*subsidiary Clear Wireless LLC*
*(collectively referred to as*
*Clear Wireless),*

     Defendant.

JANIE S. MAYERON, United States Magistrate Judge

     The above matter came on before the undersigned upon defendants' Motion for Summary Judgment [Docket No. 92]; Plaintiff, Joseph Dixon's Motion For Judgemnt [sic] Against Defendant Clearwire Corporation and for Sanctions Agaist [sic] its Counsels on Ground of Surprise by Defendant Clearwire Corporation Invoked Under FRCVP 60(b) ("Plaintiff's First Motion for Judgment") [Docket No. 110]; and Plaintiff, Motion to the Court for Relief and Judgment to be Granted Plaintiff, Immediately Without Delay and Without in Favor of Plaintiff, Joseph Dixon for the Amount Demanded in the Pleading by Plaintiff, Joseeph [sic] Dixon for $1,390,000.00 Plus $60,000.00 Legal Fees and Courts Cost for Prosecuting and Defendant this Case Continuation of this Case Judgment by Entitllement [sic] of Judgment by Surprised Authorised [sic] by FRCVP 60(b) Surprise the Court Shouldngrant [Sic] Judment [Sic] in Favor of the Injured Party Dor [sic] the Amount Demanded by the Injured Party Joseph Dixon in any Act of Surprise by the Violatin [sic] Party FRCVP 60 Surprise and Judgment Invoked by Plaintiff, Joseph Dixon Pursuant to Fed R. Civ. P. 60 Surprise—Judgment Demanded in

Favor of Joseph Dixon and Against Defendant ("Plaintiff's Second Motion for Judgment") [Docket No. 117].

Plaintiff Joseph Dixon appeared <u>pro</u> <u>se</u>. Kerry L. Middleton, Esq. and Rhiannon C. Beckendorf, Esq. appeared on behalf of defendant.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.    BACKGROUND

The only remaining claim in this case, is Dixon's breach of contract claim. <u>See</u> Report and Recommendation [Docket No. 35], <u>aff'd</u> <u>by</u> July 31, 2012 Order [Docket No. 52].

On March 21, 2011, Dixon signed up for wireless internet service with Clearwire. <u>See</u> Affidavit of Rhiannon C. Beckendorf in Support of Defendant's Motion for Summary Judgment [Docket No. 96] ("Beckendorf Aff."), Ex. 5 (Dixon Dep.), p. 91. Clearwire submitted an audio recording of a conversation between Dixon and Clearwire's agent, and a transcript of this recording, at which time Dixon agreed to pay Clearwire $71, plus taxes, a month for this internet service.[1] <u>Id.</u> (Dixon Dep.), Ex. 1 (Audio Recording of Conversation between Plaintiff and Defendant's Agents), Ex. 7 (Transcript of Audio Recording), p. 4. In this recording, Dixon is heard to agree to pay a first payment of $82.95, which included the first month service, the first month lease payment, a fee for shipping the equipment he needed to access the internet, plus a 15% local tax. <u>Id.</u> He also agreed to pay approximately $72 a month after the first month's service, which

---

[1]    This Court notes that defendants are not moving for summary judgment based on this recording, thus the Court will not address Dixon's baseless assertion that the recording was fabricated. <u>Id.</u> (Dixon Dep.), pp. 83-84.

included the internet service, an $11 lease fee, and local taxes of approximately $1. Id. Further, Dixon agreed to have the charges deducted monthly from a bank account with Wells Fargo. Id., Ex. 5 (Dixon Dep.), p. 148.

Shortly after this call, Dixon received a home modem for his home internet service, and a USB plug-in, through which he would receive mobile internet service. Id., Ex. 5 (Dixon Dep.), pp. 150, 153-54, 159-60. Once he received these devices, Dixon was able to connect to the internet and began receiving both home and mobile internet service. Id., p. 161.

Dixon testified at his deposition that the contract was made up of three pages of documents, as well as oral promises regarding reliability that he did not identify with any specificity. Id., pp. 205-06. The first document relied upon by Dixon was titled, "Please Review Your Plan and Complete Your Setup Your Plan WiMAX Take 2 On-the-Go CLEAR Internet," which stated that the monthly charge for service was $30.00. Id. (Dixon Dep.), Dep. Ex. 3. The set-up document for also required Dixon to check a box "to acknowledge that you've read and agree to the following terms of service." Id. The box was checked. Id. The second page relied upon by Dixon stated:

**TERMS OF SERIVCE**

WIRELESS INTERNET ACCESS AND RELATED SERVICES

Effective March 1, 2011.

Id. (Dixon Dep.), Dep. Ex. 4. The third document authorized automatic monthly credit card payments to Clearwire. Id. (Dixon Dep.), Dep. Ex. 5.

Dixon testified that the terms of the contract were that Clearwire was going to provide him with reliable internet service for $30.00 per month. Id. (Dixon Dep.), pp.

198-99.  He could not point to any documents promising reliable services, except for some unidentified promotional materials.  Id. (Dixon Dep.), pp. 200-02.

On March 23, 2011, Dixon was charged $84.75 for his first month of internet service.  Id., pp. 164-66, Ex. 10 (Checking Account History); see also Affidavit of Joseph Dixon [Docket No. 123] ("Dixon Aff."), ¶ 30.  Dixon testified that he was charged a bank overdraft fee of $35 because he did not have enough money in his account to cover the payment, however, on April 4, 2011, the bank reversed the overdraft fee.  Id., p. 166, Dep. Ex. 10; Dixon Aff., ¶ 30.  On April 25, 2011, Dixon was charged $71.87 for his second month of internet service.  Id., pp. 166-67, Dep. Ex. 10; Dixon Aff., ¶ 30.  Again, this resulted in April 26, 2011 overdraft fee on Dixon's bank account in the amount $35.  Id., p. 168, Dep. Ex. 10; Dixon Aff., ¶ 30.

After Dixon contacted Clearwire regarding the amount taken out of his account, Clearwire instructed Dixon to send the internet modem back.  Id. (Dixon Dep.), pp. 240-41.  Thus, it is Dixon's position that Clearwire cancelled his internet service.  Id.

From May through July 2011, Clearwire withdrew $127.54 from Dixon's checking account.  Id. (Dixon Dep.), Dep. Ex. 10 (Checking Account History); Dixon Aff., ¶ 30.  During this same time period, Clearwire refunded $111.87 to Dixon's account.  Id.; Dixon Aff., ¶ 31.  As a result, as of July, 2011, Dixon was out-of-pocket $15.56 in out-of-pocket charges.

Dixon testified that his internet service was intermittent from June through July 2011.  Id. (Dixon Dep.), pp. 213, Dep. Ex. 12 (July 7, 2011 internet chat between Dixon and Clearwire's agent, during which Dixon complained that his service had been cut off on this date).  In July 2011, Dixon's service terminated and there were no further

charges to his account. Id., pp. 253-55. After reimbursements of $111.98, the total amount of unrefunded charges to Dixon's account was $172.19. Id., pp. 243-53.

Dixon testified that Clearwire breached the contract by over-charging him for internet service, failing to provide him with reliable service, charging him a restocking fee, charging him a suspension fee of $25.00 and cutting off service. Id. (Dixon Dep.), pp. 198, 201, 203-04, 207-08, 214.

As a result of this alleged breach, Dixon testified that he was deprived of business and educational opportunities and social contact. Id., pp. 216-17. With regards to his business opportunities, Dixon asserted that without the internet, he could not promote or make money as a music performer and entertainer. Id. He also claimed damages for the loss of money that he could have used for investing, but did not provide what those lost opportunities entailed. Id., pp. 217-18. In addition, Dixon claimed that he was entitled to attorneys' fees, despite the fact that he is proceeding pro se. Id., pp. 219-220.

With regard to being overcharged for internet service, Dixon stated that he was overcharged by $54.75 in March of 2011 and overcharged by $41.87 in April of 2011. Id., pp. 244-44, Ex. 10 (Checking Account History). Dixon conceded that he was not overcharged in May 2011, because subtracting from the total charges for the month the refunds he received, he was only charged $25.56 for that month. Id., pp. 244-49, Ex. 10. The only activity in June 2011 was a refund by Clearwire to Dixon in the amount of $40.00. Id., pp. 251-53, Ex. 10. The only withdrawal by Clearwire in July 2011 was for $30.00, although Dixon claimed that Clearwire did not provide him with internet service for the month of July. Id., p. 253, Ex. 10.

As to out-of-pocket costs incurred for not having received internet service through Clearwire, Dixon testified that he had to travel to a coffee shop 2-3 times per week to use the free internet and as a result, had to spend approximately $2.75 for things, and also he was required to pay bus fees to travel to the coffee shop— amounting to approximate total costs ranging from $15.00 to $20.00 week in order to access the internet. Id., pp. 223-24, 235-37. Dixon also attempted to obtain internet service through Comcast (November 2012) and NetZero (December 2012), and was able to activate service with these companies, however, the internet service was terminated by each provider approximately eight days after the initiation of service. Id., pp. 224-230, 236. Dixon was able to obtain free internet at the library, but his use was limited. Id., pp. 237-38.

Further, Dixon asserted that Clearwire's overcharging for internet services resulted in him being assessed overdraft charges by his bank, which in turn ruined his credit rating. Id., pp. 217-18, 255-56. Dixon has not reviewed his credit report for the last seven years. Id., pp. 260-61.

On February 13, 2013, Clearwire sent the following letter to Dixon, enclosing a check in the amount of $500.00:

> Enclosed please find a check from Clear Wireless payable to you in the amount of $500.00 in connection with the above-reference account. According to your account history, Clear Wireless collected a total of $284.16 from your related account.
>
> The enclosed check represents a full refund of all payments received by Clear Wireless related to your account, as well as reimbursement for any bank overdraft charges and interest from March 1, 2011. We appreciate your business and apologize for any unconvinced.

Beckendorf Aff., Ex. 2.

Dixon rejected the $500.00 check and returned it to Clearwire.  Id.

On December 27, 2012, Clearwire made the following Offer of Judgment to Dixon under Rule 68 of the Federal Rules of Civil Procedure:

> Clearwire agrees to allow entry of judgment in this matter against Clearwire and in favor of Plaintiff Joseph Dixon in the total amount of $3,000, exclusive of taxable costs accrued.  If plaintiff accepts this offer, he shall submit his taxable costs accrued to the Court for determination.

Id., Ex. 3.  On January 3, 2013, Dixon rejected Clearwire's Rule 68 offer of judgment. Id., Ex. 4.

The present matter is before the Court on Clearwire's motion for summary judgment and Dixon's motions for judgment.

## II.    STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).  "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex, 477 U.S. at 327.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; see also Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256.

When deciding a motion for summary judgment, a court can only consider admissible evidence. Henthorn v. Capitol Commc'ns, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004); see also Stuart v. Gen'l Motors Corp., 217 F.3d 621, 636 n. 20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)."). For example, a party cannot rely on hearsay in order to avoid summary judgment. Mason v. Correctional Medical Services, Inc., 559 F.3d 880, 885 (8th Cir. 2009); see also Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 923 (8th Cir. 2004).

## III.    SUMMARY OF THE PARTIES' ARGUMENTS

### A.    Defendant's Motion for Summary Judgment

Clearwire asserted that Dixon's breach of contract claim fails, as he cannot establish the required element of damages. See Defendant's Memorandum of Law in Support of Motion for Summary Judgment [Docket No. 94] ("Def.'s Mem."), p. 9. Specifically, Clearwire argued that Dixon is limited to out-of-pocket damages and cannot

recover either punitive or emotional distress damages based on his breach of contract claim.  <u>Id.</u>  In addition, Clearwire claimed that Dixon is not entitled to attorney's fees, as there is no contract authorizing the imposition of such fees, and as a <u>pro</u> <u>se</u> litigant, he cannot recover attorney's fees.  <u>Id.</u>, p. 10.  In addition, Clearwire contended that Dixon has no recoverable consequential damages, as the only damages that are not remote, conjectural or speculative are the charges that Dixon alleged Clearwire made to his bank account.  <u>Id.</u>, p. 11.  In other words, these are the only damages that were known or reasonably contemplated by the parties when the contract for internet services was entered.  <u>Id.</u>  According to Clearwire, the balance of damages alleged by Dixon – deprivation of the use of internet, the costs incurred for obtaining free internet service at a coffee shop, and alleged harm to his credit rating – were neither known nor reasonably contemplated by the parties.  <u>Id.</u>, pp. 11-14.  Additionally, Dixon provided no competent evidence that showed he was denied credit as a result of the overdraft fees.  <u>Id.</u>, pp. 13-14.

Clearwire also argued that because Dixon only ended up paying $172.18 for five months of internet service, he received the benefit of the bargain, and in any event, Dixon has suffered no damages in this case because he was made whole by the $500.00 check sent to him by Clearwire.  <u>Id.</u>, pp. 14-15 (citing <u>Jensen v. Duluth Area YMCA</u>, 688 N.W.2d 574, 579 (Minn. App. 2004).  In addition, Clearwire contended that because its Rule 68 Offer of Judgment in the amount of $3,000 satisfies Dixon's entire claim, there is no actual, ongoing case or controversy, and the Court is divested of subject matter jurisdiction over this case.  <u>Id.</u>, pp. 15-19.

Dixon countered that Clearwire filed its motion for summary judgment after this Court's deadline for dispositive motions.  <u>See</u> Plaintiff's Memorandum of Law of Law

[sic] in Response Opposition and Denial of Defendant's Claim and to Plaintiff's Request for Enlargement to File Dispositive Motion Summary Judgment Untimely and Defiance and Contempt of Courts [sic] Scheduling Order [Docket No. 113], pp. 7-22. According to Dixon, this late filing caught him by surprise, and he is therefore entitled to relief under Rule 60(b) of the Federal Rules of Civil Procedure. Id., pp. 22-25, 29. Dixon also requested that he be allowed to file his own dispositive motions due to the surprise of Clearwire's late motion for summary judgment.[2] Id., pp. 27-28.

In a second memorandum that Dixon filed in opposition to Clearwire's motion for summary judgment, Dixon argued that summary judgment is not appropriate, as the undisputed evidence in the record shows that Clearwire breached the written contract for internet service by charging him more than $30.00 per month and by charging him a suspension fee of $25.00. See Plaintiff's Response Memorandum Law in Response in Opposition and Denial of Defendant; Surprised and Frivolous Motion for Summary Judgment [Docket No. 120], pp. 2-17. Dixon also claimed that Clearwire breached the contract by bundling services together in violation of antitrust laws and illegally subpoenaed his confidential information. Id., pp. 18-19, 23.

## B.    Dixon's First Motion for Judgment

As part of his first motion for judgment, Dixon argued that he was entitled to relief from judgment due to the "surprise" of Clearwire's late motion for summary judgment. See Plaintiff's Memorandum in Support of Motion for Relief and Judgment Pursuant to Rule 60(b) [Docket No. 112], pp. 2-7. Dixon also claimed he was "surprised" by Clearwire's obtaining his confidential documents through subpoenas. Id., pp. 10-12, 31-

---

[2]    Dixon has since filed two dispositive motions, which the Court has considered as part of the present Report and Recommendation. See Docket Nos. 110, 117.

33.   In addition, Dixon asserted that Clearwire engaged in false advertisement by advertising $19.99 internet service at $30.00 per month.   <u>Id.</u>, p. 18.   Further, Dixon submitted that the internet service provided by Clearwire was slower and less secure then promised by Clearwire and that Clearwire breached its fiduciary duty to him.   <u>Id.</u>, pp. 23-24.   Dixon then reiterated that the record showed that Clearwire breached the written contract for internet service by charging him more than $30.00 per month.   <u>Id.</u>, pp. 25-29.   Dixon further asserted that Clearwire had suppressed evidence in this case, by refusing to provide him with a copy of his deposition transcript and by failing to truthfully answer discovery.   <u>Id.</u>, pp. 33-35.

In opposition, Clearwire argued that Dixon's motion has no basis, since Rule 60(b) of the Federal Rules of Civil Provided only allows relief from a final judgment, order or proceeding, and does not allow Dixon to seek relief from surprise by Clearwire. <u>See</u> Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgemnt Against Defendant Clearwire Corporation and For Sanction . . . . and Motion to the Court for Relief And Judgment To Be Granted Plaintiff  . . . . [Docket No. 118], p. 2.

### C.   <u>Plaintiff's Second Motion for Judgment</u>

In his second motion for judgment, Dixon again asked for relief and judgment under Rule 60(b) due to the "surprise" caused to him by Clearwire's filing of a motion for summary judgment after the deadline authorized by this Court's pretrial scheduling order.   <u>See</u> Plaintiff's Second Motion for Judgment [Docket No. 117], pp. 2-8.   He also claimed that he was entitled to such relief because Clearwire failed to provide him with all of the discovery he sought (including a copy of his deposition transcript) and improperly obtained his confidential information via subpoenas.   <u>Id.</u>, pp. 8-12, 22, 31-34. In addition, Dixon claimed that he was entitled to relief under Rule 60(b) because

Clearwire committed fraud by advertising internet service for $19.99 per month; Clearwire breached its fiduciary duty to him; submitted false documents; Clearwire breached the contract for internet service by charging him more than $30.00 per month and by terminating service even though he had paid Clearwire $30.00; and Clearwire's counsel committed perjury by claiming there was no written contract in this case. <u>Id.</u>, pp. 17-32, 35-44.

## IV.    ANALYSIS

### A.    <u>Clearwire's Motion for Summary Judgment</u>

Under Minnesota law, a breach of contract claim contains the following elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." <u>Parkhill v. Minn. Mut. Life Ins. Co.</u>, 174 F. Supp.2d 951, 961 (D. Minn. 2000) (citing <u>Briggs Trans. Co. v. Ranzenberger</u>, 217 N.W.2d 198, 200 (Minn. 1970)).  In this case, for its first argument, Clearwire is only asserting that Dixon's lack of damages entitles it to summary judgment.  "A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." <u>Jensen v. Duluth Area YMCA</u>, 688 N.W.2d 574, 578-79 (Minn. Ct. App. 2004) (citing <u>Logan v. Norwest Bank Minn., N.A.</u>, 603 N.W.2d 659, 663 (Minn. Ct. App. 1999); <u>Nguyen v. Control Data Corp.</u>, 401 N.W.2d 101, 105 (Minn. Ct. App. 1987)).

"A damage award in a breach of contract action is intended to place the nonbreaching party 'in the position in which he would be if the contract were performed.'" <u>Kaplan v. Mayo Clinic</u>, Civil No. 07-3630 (JRT/JJK), --- F.Supp.2d ----, 2013 WL 2317993, *5 (D. Minn. May 28, 2013) (citing <u>Lesmeister v. Dilly</u>, 330 N.W.2d 95, 102 (Minn. 1983); <u>Jepson v. Gen. Cas. Co. of Wis.</u>, 513 N.W.2d 467, 472

(Minn.1994) ("[P]eople should get the benefit of the contracts they enter into, nothing less and nothing more.")).

The first category of such damages for a breach of contract are general damages, which are characterized as "naturally and necessarily" resulting from the act complained of. DeRosier v. Utility Systems of America, Inc., 780 N.W.2d 1, 4 (Minn. Ct. App. 2010) (citing Indep. Brewing Ass'n v. Burt, 109 Minn. 323, 327, 123 N.W. 932, 934 (1909)). The second category of damages is consequential damages, which are the "natural, but not the necessary, result of a breach" of contract, and are not recoverable unless they are reasonably foreseeable to the parties at the time the agreement between the parties is reached. Id. at 4-5 (citing Smith v. Altier, 184 Minn. 299, 300, 238 N.W. 479, 479 (1931)); see also County of Blue Earth v. Wingen, 684 N.W.2d 919, 924-25 (Minn. Ct. App. 2004); Imdieke v. Blenda-Life, Inc., 363 N.W.2d 121, 125 (Minn. Ct. App. 1985), rev. denied (Minn. Apr. 26, 1985) ("Consequential damages are the damages which naturally flow from the breach of a contract, or may reasonably be contemplated by the parties as a probable result of a breach of the contract."). To be recoverable, damages must not be speculative, remote, or conjectural. Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260, 267 (Minn. 1980).

Clearwire's motion for summary judgment is premised on two different theories. First, because its payment of $500 to Dixon far exceeded any damages he can prove from its alleged breach of contract, his breach of contract claim fails because he cannot make out the fourth element of the claim. Alternatively, Clearwire submitted that Dixon's rejection of its Rule 68 Offer of Judgment, which again far exceeded any provable damages by Dixon, requires that it be granted summary judgment as no justiciable controversy remains between the parties.

As stated previously, Dixon asserted that he is entitled to damages for the overcharges for internet service; lost business and educational opportunities as a result of not having internet service; the costs he incurred go to a coffee shop and library to access the internet; missed investment opportunities due to not being able to invest the money he lost because Clearwire overcharged him for internet service; damages resulting from his ruined his credit rating; loss of social contact; and attorney's fees.

Assuming that the contract in this case provided for $30.00 per month for internet service and no more, between March and July of 2010, Dixon would have incurred $150.00 in costs for the internet. It is undisputed that after taking into account the withdrawals and credits to his account, Dixon paid $172.29 to Clearwire ($284.16 taken from his account, minus $111.87 credited to his account), which results in a $22.29 overcharge pursuant to the contract, plus one $35 overdraft fee, for a total of $57.29.

While it is arguable that that in this day and age, the internet has become intertwined with and supports many consumer's business activities, and it was foreseeable at the time the relationship between Dixon and Clearwire commenced that the internet service would be used for such activities, Dixon's general assertion that he lost business and educational opportunities, without providing any competent supporting evidence, is too remote and speculative to support a claim for damages for a breach of contract claim. For example, Dixon's belief that he could have earned $1.46 million by selling at least two of his music albums for a total of $40 in at least 100 countries every day for one year, is nothing more than rank speculation. <u>See</u> Plaintiff's Appendix to

Response and Objection Clearwire Corp. LLC Motion for Summary Judgment [Docket No. 122] ("Pl.'s Appx."),[3] A66-67.

Similarly, the Court concludes that Dixon's assertion that he lost the ability to obtain profits from investing the extra money Clearwire took from him is too speculative and conjectural to support a claim for damages under a breach of contract theory.

As to the costs incurred to obtain free replacement internet service at a coffee shop, library or through other internet providers, this Court finds that such costs are not recoverable as they are not damages that were reasonably foreseeable by the parties at the time the agreement between the parties was reached. See Jensen, 688 N.W.2d at 579 ("The cost of a membership at another health club cannot be considered consequential damages, because it was not something foreseeable at the onset of the contract."). In other words, it was not reasonably foreseeable at the time the parties entered into the contract that Dixon would need to travel to the library or coffee shop to use the internet, or would need to buy a beverages and food at coffee shop in order to access the internet, or that other internet providers would terminate his service a few days after activation.

---

[3]    The Court notes that this appendix was filed on June 13, 2013, and contains two additional memoranda—Plaintiff's Supplemental Response in Opposition and Denial of Defendant's Surprised and Frivolous Motion for Summary Judgment, and Plaintiff's Supplemental Response Memorandum of Law in Response in Opposition and Denial of Defendant's Surprised and Frivolous Motion for Summary Judgment. Both the appendix and memoranda violate of Local Rule 7.1 and this Court's Order dated June 7, 2013. See Docket No. 121. Not only were the appendix and memoranda untimely and not permitted by this Court, but Dixon had already filed two memoranda in opposition to Clearwire's motion for summary judgment. In any event, the Court notes that, in large part, these briefs reiterated arguments that Dixon has already asserted in conjunction with his other memoranda in opposition to Clearwire's motion for summary judgment and his own motions for relief.

Further, the Court finds that it was not reasonably foreseeable at the time the parties entered into the contract that Dixon would not have enough money in his account to pay for internet service, which would lead to an overdraft fee, and thereby result in a downgrade in his credit rating.  But even if the overdraft fee negatively affected  his credit rating, Dixon has presented no evidence that his credit scores were detrimentally effected and then lead to economic damages.  Indeed, Dixon admitted that he has not even reviewed his credit report in the last seven years.  <u>See</u> Beckendorf Aff., Ex. 5 (Dixon Dep.), pp. 260-61.

Clearwire is also correct that Dixon cannot recover any emotional distress damages, (referred to a loss of social contact by Dixon, <u>see</u> <u>e.g.</u>, Pl.'s Appx., A68), as the result of a breach of contract unless it is accompanied by a willful tort.  <u>See</u> <u>Kaplan</u>, 2013 WL 2317993 at *5-6 (citing <u>Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.</u>, 556 N.W.2d 557, 561 (Minn. 1996)).  In this case, Dixon's breach of contract is not accompanied by a willful tort.

Likewise, Dixon is not entitled to punitive damages, (<u>see</u> Pl.'s Appx., A75), for a breach of contract, where the claim is not accompanied by a willful tort.  <u>See</u> <u>Driscoll v. Standard Hardware, Inc.</u>, 785 N.W.2d 805, 815 (Minn. Ct. App. 2010) ("Punitive damages are not available for breach-of-contract claims or breach-of-warranty claims absent an independent tort, even if the breach is malicious.") (citing <u>Minn.-Iowa Television Co. v. Watonwan T.V. Improvement Assoc.</u>, 294 N.W.2d 297, 311 (Minn. 1980)).[4]

---

[4]     Even if punitive damages were available, Dixon has failed to move to amend his complaint to add such a claim as required by Minn. Stat. Minn. Stat. § 549.20.  "'In the Federal Courts of this District, the pleading of punitive damage claims, under causes of actions premised upon the law of the State of Minnesota, must generally conform to the

Finally, Dixon is not entitled to attorney's fees for representing himself. The rule is that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 130 S.Ct. 2149, 2156-57 (2010). Dixon has not pointed this Court to a contract provision or statute that would entitle him to attorney's fees. But even if there was a contractual or statutory basis for an award of attorney's fees, a pro se litigant is not entitled to attorney's fees for representing himself. See White v. Armontrout, 29 F.3d 357, 361 (8th Cir. 1994) ("Since Mr. White was representing himself in district court, moreover, he is not entitled to attorneys' fees.") (citing Coleman v. Turner, 838 F.2d 1004, 1005 (8th Cir. 1988) (per curiam); Kay v. Ehrler, 499 U.S. 432, 435 (1991)).

In sum, the Court concludes that to the extent that the contract was for $30.00 per month for internet service, as claimed by Dixon, based on the undisputed facts in the case and the applicable law, the only damages that he could seek for a breach of the contract, is $22.29 for the alleged overcharge pursuant to the contract, plus one $35 overdraft fee, for a total of $57.29.

Consequently, as Dixon's alleged damages are $57.29, the Court concludes that this action must be dismissed based on Clearwire's Rule 68 Offer of Judgment in the amount of $3,000. "Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases'" and 'Controversies.'" United States Parole Commission v. Geraghty, 445 U.S. 388, 395 (1980). "[A] valid offer of judgment [under

_____

requirements of Minnesota Statutes Sections 549.191 and 549.20.'" Berczyk v. Emerson Tool Co., 291 F. Supp.2d 1004, 1008 (D. Minn. 2003) (quoting Olson v. Snap Prods., Inc., 29 F. Supp.2d 1027, 1034 (D. Minn. 1998)) (citations omitted). Consequently, "[u]nder Minnesota law, a plaintiff may not seek punitive damages in an initial complaint but must do so by making a motion to amend the pleadings. Popp Telecom, Inc. v. American Sharecom, Inc., 361 F.3d 482, 491 n. 10 (8th Cir. 2004) (citing Minn. Stat. § 549.191).

Rule 68] that would satisfy a plaintiff's <u>entire claim</u> for relief eliminates the controversy between the parties and leaves nothing for the court to resolve, effectively mooting the action and removing jurisdiction." <u>Jones v. CBE Group, Inc.</u>, 215 F.R.D. 558, 562 (D. Minn. 2003) (emphasis added) (string citation omitted); <u>see also</u> <u>Malm v. Household Bank (SB), N.A.</u>, No. Civ. 03-4340 (ADM/AJB), 2004 WL 1559370, *3 (D. Minn. July 07, 2004). "'In the context of Rule 68, courts generally hold that a valid offer of judgment [that provides complete relief to the plaintiff], even if rejected, renders a party's claims moot and eliminates subject matter jurisdiction.'" <u>Johnson v. Midwest ATM, Inc.</u>, 881 F. Supp.2d 1071, 1073 (D. Minn. 2012) (quoting <u>Roble v. Celestica Corp.</u>, 627 F. Supp.2d 1008, 1012 (D. Minn. 2007) (citation omitted)); <u>Harris v. Messerli & Kramer, P.A.</u>, Civ. No. 06-4961, 2008 WL 508923, *2 (D. Minn. Jan. 2, 2008) (citations omitted) ("[A]s a general matter, a Rule 68 offer that provides complete relief to the plaintiff renders the plaintiff's claims moot, even if the plaintiff refuses the offer.").

There is no dispute that Dixon rejected Clearwire's Offer of Judgment. <u>See</u> Beckendorf Aff., Ex. 3. Thus, the question before the Court is whether Clearwire offered everything to which Dixon was entitled in his suit. As stated previously, this Court has found that at most, Dixon is entitled to $57.29. Moreover, Clearwire has not placed a cap on the amount of costs to which Dixon may be entitled, only that the amount determined by the Court.[5] As such, this Court finds that Clearwire's motion for

---

[5] In <u>Marek v. Chesny</u>, 473 U.S. 1, 6 (1985), the United States Supreme Court explained in conjunction with a Rule 68 offer of judgment that:

> If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to

18

summary judgment should be granted because its Offer of Judgment meets (if not greatly exceeds) the maximum amount of damages and costs to which Dixon is entitled under his breach of contract claim, thereby effectively mooting his action against Clearwire and removing jurisdiction from this Court. See Jones, 215 F.R.D. at 562; see also Malm, 2004 WL 1559370 at *3 ("Sherman correctly states that its Offer of $1001, plus attorney fees and costs for Plaintiff's FDCPA claim, constitutes the maximum statutory recovery for violations of the FDCPA. Consequently, Sherman's Offer would have mooted Plaintiff's FDCPA claim had it required dismissal of that claim only.") (citations omitted).

In summary, even assuming that Dixon could make out the first three elements of a breach of contract claim -- formation of a contract, performance by him of any conditions precedent, and a material breach of the contract by Clearwire – his suit fails because the Rule 68 Offer of Judgment made by Clearwire and rejected by him

---

include in its judgment an additional amount which in its discretion, it determines to be sufficient to cover the costs. In either case, however, the offer has allowed judgment to be entered against the defendant both for damages caused by the challenged conduct and for costs. Accordingly, it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is allowing for costs, or, for that matter, whether it refers to costs at all. As long as the offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer will be valid.

Id. at 6 (internal citation omitted). While Clearwire stated in its Rule 68 offer of judgment that the $3,000 excluded costs, the following sentence in its offer allowed for the award of costs as ordered by the Court. Thus, the Court concludes the plain language of the Rule 68 offer of judgment does not exclude costs.

exceeds any damages to which he could prove, and as such moots any controversy between the parties.

**B.    Dixon's Motions for Judgment and Relief**

As this Court has determined that no justiciable controversy between the parties remains, the Court has not basis for considering Dixon's motions for judgment and other relief.  However, even if the Court did retain subject matter jurisdiction over the action, Dixon's motions for judgment and relief must be denied.

Both motions rely on Rule 60(b) of the Federal Rules of Civil Procedure, which provides:

> (b) <u>Grounds for Relief from a Final Judgment, Order, or Proceeding</u>. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, <u>surprise</u>, or excusable neglect;. . .

Fed. R. Civ. P. 60(b) (emphasis added).

According to Dixon, the alleged surprise he suffered, which entitles him to relief, is the purported late filing of Clearwire's motion for summary judgment.  This argument has no merit.   First, this Court has already concluded that Clearwire's motion for summary judgment was timely.  <u>See</u> May 20. 2013 Order [Docket No. 116].  Second, Rule 60(b) applies to relief from final judgments, final orders or final proceeding, and no final judgment or order has been rendered in this matter.

As to the other allegations Dixon asserted in these motions, the only remaining claim in this case is Dixon's breach of contract claim.  Therefore, any other purported claims of false advertising or breach of fiduciary duty cannot afford Dixon any relief.

Further, any claim of discovery deficiencies or Clearwire's efforts to obtain information through subpoenas should have been addressed by Dixon upon a timely discovery motions and provide no basis to afford judgment in his favor. Finally, to the extent that Dixon is seeking summary judgment on the basis that the contract for internet service should have been for $30.00 a month, the Court has already concluded that even accepting this fact as undisputed, the present action is moot, as he rejected the Offer of Judgment that was in excess of the amount he could have recovered for his breach of contract claim.

For all of these reasons, Dixon's motion for Dixon's motions for judgment and relief should be denied.

## V.     RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendant's Motion for Summary Judgment [Docket No. 92] be **GRANTED** and that plaintiff's Complaint be dismissed **WITH PREJUDICE**;

2.      Plaintiff, Joseph Dixon's Motion For Judgemnt [sic] Against Defendant Clearwire Corporation and for Sanctions Agaist [sic] its Counsels on Ground of Surprise by Defendant Clearwire Corporation. Invoked Under FRCVP 609(b) [Docket No. 110] be **DENIED**; and

3.      Plaintiff, Motion to the Court for Relief and Judgment to be Granted Plaintiff, Immediately Without Delay and Without in Favor of Plaintiff, Joseph Dixon for the Amount Demanded in the Pleading by Plaintiff, Joseeph [sic] Dixon for $1,390,000.00 Plus $60,000.00 Legal Fees and Courts Cost for Prosecuting and Defendant this Case Continuation of this Case Judgment by Entitllement [sic] of Judgment by Surprised Authorised [sic] by FRCVP 60 Surprise the Court Shouldngrant

[sic] Judgment [sic] in Favor of the Injured Party Dor [sic] the Amount Demanded by the Injured Party Joseph Dixon in any Act of Surprise by the Violatin [sic] Party FRCVP 60 Surprise and Judgment Invoked by Plaintiff, Joseph Dixon Pursuant to Fed R. Civ. P 60 Surprise—Judgment Demanded in Favor of Joseph Dixon and Against Defendant [Docket No. 117] be **DENIED**.

Dated:        November 25, 2013

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

### NOTICE

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 9, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **December 9, 2013**.